**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

**DONALD STANLEY VERNE,**

**Petitioner,**

**v.**                                                    **Case No.  3:15cv001-LC/CAS**

**JULIE L. JONES, Secretary,
Department of Corrections,**

**Respondent.**
_____/

## REPORT AND RECOMMENDATION TO DENY § 2254 PETITION

Petitioner, Donald Stanley Verne, a prisoner in the custody of the

Florida Department of Corrections, proceeding pro se, filed a petition for

writ of habeas corpus pursuant to 28 U.S.C. § 2254 with exhibits on

December 3, 2014, under the mailbox rule.  ECF No. 1.  The Respondent

filed a response with attachments on September 15, 2015.  ECF No. 13.

Petitioner filed a motion to stay proceedings on September 23, 2015, on

the grounds that a case he relied on was pending in the Florida Supreme

Court.  ECF No. 15.  After response and reply, the Court denied the motion

for stay.  ECF No. 19.  Petitioner then filed a reply to the Respondent's

response to the § 2254 petition on January 15, 2016.  ECF No. 22.

The matter was referred to the undersigned United States Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and Northern District of Florida Local Rule 72.2(B).  After careful consideration of all the issues raised, the undersigned has determined that no evidentiary hearing is required for disposition of this case.  *See* Rule 8(a), R. Gov. § 2254 Cases in U.S. Dist. Cts.  For the reasons set forth herein, the pleadings and attachments before the Court show that Petitioner is not entitled to federal habeas relief and this amended § 2254 petition should be denied.

## Facts and Procedural History

On August 30, 2010, Petitioner was charged by Information in the circuit court of the First Judicial Circuit, Escambia County, Florida, with the July 29, 2010, second-degree murder of Peter James Delmonico, in violation of section 782.04(2), Florida Statutes.  Ex. A at 1.[1]  Prior to trial, Petitioner filed a motion to dismiss pursuant to section 776.032, Florida Statutes, Florida's "Stand Your Ground" law, which provides immunity from prosecution under certain circumstances.  Ex. A at 39.  The motion was heard and denied.  Ex. A at 79.  Jury trial was held on February 21-23,

---

[1] Hereinafter, citations to the state court record, "Ex. –," refer to exhibits A through Y submitted with Respondent's answer, ECF No. 13, unless otherwise indicated.

2011.  Ex. E &F.  Petitioner was found guilty as charged, with the specific finding that Petitioner did use, carry, or display a weapon.  Ex. A at 113.  Judgment and sentence were entered on March 23, 2011, Ex. A at 127-35, and Petitioner was sentenced to life in prison, with credit for 238 days time served.  Ex. A at 115-122.

Petitioner appealed to the state First District Court of Appeal, Ex. G, H, and I, and the court affirmed per curiam without opinion on January 27, 2012.[2]  Ex. J.  The mandate was issued on February 14, 2012.  Ex. K.  *See* Verne v. State, 78 So. 3d 540 (Fla. 1st DCA 2012) (table).  Petitioner filed a petition for writ of habeas corpus alleging ineffective assistance of appellate counsel on December 16, 2012, Ex. L, which was denied on the merits on January 11, 2013.[3]  Ex. N.  *See* Verne v. State, 104 So. 3d 1289 (Fla. 1st DCA 2013) (mem).

On November 5, 2012, Petitioner filed his initial motion for post-conviction relief under Florida Rule of Criminal Procedure 3.850.  Ex. O at 1-144.  The motion was amended on November 25, 2012, Ex. O at 145-51,

---

[2] The claims of error raised on direct appeal were: (1) Petitioner was denied a fair trial by an impartial magistrate; (2) the trial court committed fundamental error in instructing the jury on justifiable use of deadly force because that instruction imposed a duty to retreat; and (3) the trial court committed fundamental error in failing to instruct the jury on Florida's "Stand Your Ground" immunity.  Ex. G.

[3] Petitioner claimed in his petition for writ of habeas corpus that appellate counsel was ineffective in failing to argue on appeal that the trial court erred in denying Petitioner's "Stand Your Ground" motion to dismiss.  Ex. L at 2.

and on January 8, 2013, the trial court entered an order striking the motion and amended motion as facially insufficient, although without prejudice to filing a further facially sufficient amended motion.  Ex. O at 152-53.

Petitioner filed an amended Rule 3.850 motion on February 7, 2013, and an "amended supplement motion" for post-conviction relief on July 30, 2013.[4]  Ex. P at 184-215.  The motions were summarily denied on October 15, 2013, by order with attachments. Ex. P at 216-44.  Rehearing was denied on November 20, 2013, and Petitioner appealed.  Ex. P at 358, 360. The state appellate court affirmed per curiam on April 24, 2014.[5]  Ex. Q. Rehearing was denied and the mandate was issued on July 8, 2014.  Ex. T.  *See* <u>Verne v. State</u>, 141 So. 3d 185 (Fla. 1st DCA 2014) (table).

---

[4] The amended supplement motion alleged (1) trial counsel rendered ineffective assistance (IAC) for failing to fully investigate and produce an exculpatory defense witness; (2) IAC for failing to object to error in instructing the jury on justifiable use of force; (3) IAC for failing to object to trial court not instructing on "Stand Your Ground" immunity; (4) IAC in failing to object to prejudicial hearsay; (5) IAC in failing to object to exclusion of evidence of victim's propensity for violence; (6) IAC in failing to object to judge's sua sponte questioning the medical examiner; (7) IAC in failing to object to use of exhibit 32 showing victim's hands; (8) IAC in failing to investigate cut on back of victim's head; (9) IAC in failing to present photo of defendant showing his injuries; (10) IAC in failing to request a crime scene reconstruction expert; (11) IAC in failing to investigate contamination of crime scene by authorities; and (12) IAC in failing to investigate pneumonia as the cause of death.  Ex. P at 184-215.

[5] No brief was filed, but none was required in an appeal from a Rule 3.850 proceeding. The First District Court of Appeal held in <u>Watson v. State</u>, 975 So. 2d 572 (Fla. 1st DCA 2008), that where a defendant does not file a brief in an appeal from summary denial of a Rule 3.850 motion, the appellate court is still required to investigate all possible means of relief.  *Id.* at 573 n.1.  *See also* Florida Rule of Criminal Procedure 9.141(b)(2)(C) (providing that briefs are "not required" when a petitioner appeals from summary denial of a Rule 3.850 motion).

Petitioner filed a successive Rule 3.850 motion on February 11, 2014, Ex. U at 1-78, which was dismissed.  Ex. U at 79-104.  Rehearing was denied and Petitioner appealed.  The state district court of appeal affirmed per curiam on July 17, 2014, Ex. V, and the mandate was issued on August 12, 2014.  Ex. W.  *See* <u>Verne v. State</u>, 147 So. 3d 990 (Fla. 1st DCA 2014) (table) (Case No. 1D14-1713).  Petitioner's pro se petition for writ of habeas corpus to correct manifest injustice was filed in the state First District Court of Appeal on July 25, 2014, Ex. X, and was denied per curiam on August 19, 2014.  Ex. Y.  *See* <u>Verne v. State</u>, 147 So. 3d 990 (1st DCA 2014) (table) (Case No. 1D14-3404).

Petitioner filed his petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 in this Court on December 3, 2014, raising the following grounds for relief:

> (1) Petitioner was deprived of a fair and impartial trial, and thus deprived of due process, because the trial judge twice departed from a position of neutrality by sua sponte questioning the medical examiner and by examining Petitioner.  ECF No. 1 at 4.

> (2) The trial court violated Petitioner's Fifth, Sixth, and Fourteenth Amendment rights by erroneously giving the jury instruction on the justifiable use of force, which imposed a duty to retreat.  ECF No. 1 at 6.

> (3) The trial court violated Petitioner's Fifth, Sixth, and Fourteenth Amendment rights by failing to instruct the jury on Florida's "Stand Your Ground" immunity.  ECF No. 1 at 7.

(4) Trial counsel rendered ineffective assistance by failing to interview, depose, or call as a witness Paul Koski, who would have provided exculpatory evidence. ECF No. 1 at 9.

(5) Trial counsel rendered ineffective assistance by failing to object to the jury instruction on justifiable use of deadly force, which was invalid because the Florida Supreme Court invalidated the "duty to retreat" requirement. ECF No. 1 at 10.

(6) Trial counsel rendered ineffective assistance by failing to object to the court's erroneous jury instructions and failing to provide complete jury instructions. ECF No. 1 at 12.

(7) Trial counsel rendered ineffective assistance by failing to object to exclusion of all evidence of the victim's propensity for violence, which was relevant to Petitioner's defense. ECF No. 1 at 14.

(8) Trial counsel rendered ineffective assistance by failing to object to the trial judge's departure from his position as a neutral and impartial magistrate when the judge questioned the medical examiner and Petitioner. ECF No. 1 at 15.

(9) Trial counsel rendered ineffective assistance by failing to object to the State's use of a photograph of the victim's hands because the photograph was not taken at the time of the incident and the medical examiner explained swelling in the hands was caused by introduction of the IV needle; if the photograph had been taken timely it would have proven that the victim struck the Petitioner. ECF No. 1 at 17.

(10)  Trial counsel rendered ineffective assistance by failing to investigate evidence that the victim could have received the cuts to the back of his head by falling against a chair. ECF No. 1 at 19

(11)  Trial counsel rendered ineffective assistance by failing to present exculpatory photographic evidence showing Petitioner's neck was swollen and his eye was swollen shut. ECF No. 1 at 21.

(12) Trial counsel rendered ineffective assistance by failing to request a crime scene reconstruction expert to reconstruct the crime scene, which would have shown crime scene evidence was mishandled. ECF No. 1 at 22.

(13) Trial counsel rendered ineffective assistance by failing to investigate the contamination of the crime scene evidence.  ECF No. 1 at 24.

(14) The state district court of appeal denied Petitioner due process and equal protection when it arbitrarily withheld the benefit of state law and treated Petitioner unequally on the issue of the "Stand Your Ground" law.  ECF No. 1 at 26.

## <u>Analysis</u>

Pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), federal courts may grant habeas corpus relief for persons in state custody only under certain specified circumstances.  Section 2254(d) provides in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  *See also* <u>Cullen v. Pinholster</u>, 563 U.S. 170, 181 (2011); <u>Gill v. Mecusker</u>, 633 F.3d 1272, 1287 (11th Cir. 2011).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this

Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13 (2000) (O'Connor, J., concurring). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413 (O'Connor, J., concurring).

The Supreme Court has explained that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Harrington v. Richter, 562 U.S. 86, 102 (2011). The Court stated:

> As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings. . . . It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no further. Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. Jackson v. Virginia, 443 U.S. 307, 332, n.5 (1979) (Stevens, J., concurring in judgment). As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Id.* at 102-03 (citation omitted). The federal court employs a " 'highly deferential standard for evaluating state-court rulings, which demands that

state-court decisions be given the benefit of the doubt.' " <u>Pinholster</u>, 563

U.S. at 181 (quoting <u>Woodford v. Visciotti</u>, 537 U.S. 19, 24 (2002)).

    "Before a federal court may grant habeas relief to a state prisoner,

the prisoner must exhaust his remedies in state court." <u>O'Sullivan v.</u>

<u>Boerckel</u>, 526 U.S. 838, 842 (1999); 28 U.S.C. § 2254(b).  The Petitioner

must have apprised the state court of the federal constitutional claim, not

just the underlying facts of the claim or a "somewhat similar state-law

claim." <u>Snowden v. Singletary</u>, 135 F.3d 732, 735 (11th Cir. 1998) (quoting

<u>Anderson v. Harless</u>, 459 U.S. 4, 5-6 (1982)).  In order for remedies to be

exhausted, "the petitioner must have given the state courts a 'meaningful

opportunity' to address his federal claim." <u>Preston v. Secretary, Florida</u>

<u>Dep't of Corr.</u>, 785 F.3d 449, 457 (11th Cir. 2015) (quoting <u>McNair v.</u>

<u>Campbell</u>, 416 F.3d 1291, 1302 (11th Cir. 2005)).  Petitioner must "fairly

present" his claim in each appropriate state court in order to alert the state

courts to the federal nature of the claim.  <u>Duncan v. Henry</u>, 513 U.S. 364,

365 (1995); <u>Picard v. Connor</u>, 404 U.S. 270, 275 (1971).

In order to obtain review where a claim is unexhausted and, thus,

procedurally defaulted, the Petitioner must show cause for the default and

prejudice resulting therefrom or a fundamental miscarriage of justice.

<u>Tower v. Phillips</u>, 7 F.3d 206, 210 (11th Cir. 1993).  In order to demonstrate

cause, Petitioner must show that an "external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim." McCleskey v. Zant, 499 U.S. 467, 497 (1991) (citing Murray v. Carrier, 477 U.S. 478, 488 (1986)).  A federal court may grant a habeas petition on a procedurally defaulted claim without a showing of cause or prejudice if necessary to correct a fundamental miscarriage of justice.  Henderson v. Campbell, 353 F.3d 880, 892 (11th Cir. 2003).  In order to satisfy the miscarriage of justice exception, the Petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent."  Schlup v. Delo, 513 U.S. 298, 327 (1995) (quoting Carrier, 477 U.S. at 496).

This Court's review "is limited to the record that was before the state court that adjudicated the claim on the merits."  Pinholster, 563 U.S. at 181. The state court's factual findings are entitled to a presumption of correctness and to rebut that presumption, the Petitioner must show by clear and convincing evidence that the state court determinations are not fairly supported by the record.  *See* 28 U.S.C. § 2254(e)(1).

For claims of ineffective assistance of counsel, the United States Supreme Court has adopted a two-part test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Strickland v. Washington, 466 U.S. 668, 687 (1984). To demonstrate deficient performance, a "defendant must show that counsel's performance fell below an objective standard of reasonableness." *Id.* at 688. Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Burt v. Titlow, 134 S.Ct. 10, 17 (2013) (quoting Strickland, 466 U.S. at 690). Federal courts are to afford "both the state court and the defense attorney the benefit of the doubt." *Id.* at 13. The reasonableness of counsel's conduct must be viewed as of the time of counsel's conduct. *See* Maryland v. Kulbicki, 136 S.Ct. 2, 4 (2015) (citing Strickland, 466 U.S. at 690).

To demonstrate prejudice under Strickland, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* For this Court's purposes, "[t]he question 'is not whether a federal court believes the state court's determination'

under the Strickland standard 'was incorrect but whether that determination

was unreasonable—a substantially higher threshold.' " Knowles v.

Mirzayance, 556 U.S. 111, 123 (2009) (quoting Schriro v. Landrigan, 550

U.S. 465, 473 (2007)).  "And, because the Strickland standard is a general

standard, a state court has even more latitude to reasonably determine that

a defendant has not satisfied that standard."  Mirzayance, 556 U.S. at 123.

A "doubly deferential judicial review" applies to a Strickland claim evaluated

under the § 2254(d)(1) standard.  *Id.*

### Ground 1: Fair and Impartial Judge and Trial

Petitioner contends that he was deprived of a fair and impartial trial,

and thus deprived of due process, because the trial judge twice departed

from a position of neutrality by sua sponte questioning the medical

examiner and by examining Petitioner.  ECF No. 1 at 4.  Petitioner raised

this claim on direct appeal as fundamental error and the appellate court

affirmed per curiam without opinion.  Ex. G at 16; Ex. J.

Petitioner's contention on direct appeal was that the judge questioned

the medical examiner in the presence of the jury, eliciting testimony as to

the number of blows to the victim's head, which had not come out in the

direct or redirect examination.  Further, Petitioner contended that the

court's questioning suggested a line of argument which the prosecutor later

used to argue the number of blows proved murder and not self-defense.

Petitioner contended that while a judge may questions witnesses in his or

her discretion, the court may not make comments or elicit testimony to

supply essential elements of the State's case.  The State disagrees and

contends that the questioning by the trial judge took place after direct and

cross-examination and outside the presence of the jury, and was simply to

clarify the medical examiner's testimony.  ECF No. 13 at 9.

At the jury trial, the jury was asked to decide whether Petitioner

committed second-degree murder or was acting in self-defense and used

justifiable deadly force when he struck and killed the victim.  The evidence

at trial was that the victim, Peter "Pete" Delmonico, was a 51 year-old lung

transplant victim in declining health.  He was found on the floor of his home

injured by blunt force trauma to his head consistent with being hit by a two-

by-four.  A two-by-four board was found in the kitchen with one area of

blood on it belonging to the victim and, in another location, a weak

indication of blood with mixed DNA.  Petitioner could have been a

contributor either by blood cells or skin cells to that weak sample.

Petitioner was present in the kitchen when the victim was found by a friend

and said he just got there and did not know what had happened.  When the

police were called, Petitioner left in the direction of a wooded area, saying

he was scared.  After Petitioner was taken into custody, his shirt was tested and blood was found on it matching Petitioner, and one area of blood did not match either Petitioner or the victim.[6]  Petitioner had the victim's blood on his shoes.

The judge's inquiry to the medical examiner, which Petitioner contends constituted improper judicial intervention in the trial, followed the medical examiner's testimony and occurred outside the presence of the jury.  The medical examiner Dr. Andy Minyard testified that when she autopsied the victim, she found extensive injuries to his head and several obvious fractures of his skull.  Ex. E at 79.  She identified a large injury to the left side of the head in which the bone had come loose from its surroundings and been pushed into the brain.  Ex. E at 84.  The medical examiner also described a large injury to the back of the head that included a fracture at the base of his skull described as a hinge fracture, which she said was seen "a lot of time in car accidents. . . . [n]ot so much in beatings, simply because of the force required."  Ex. E at 84.  The victim also had "various injuries mostly confined to the back and sides of the head."  Ex. E

---

[6] The record does not make clear exactly how Petitioner's own blood came to be on his shirt, although there was testimony by Michael Straw that earlier in the day Petitioner had been moving some scrap metal in a yard.  Crime scene technician Lacey Oden testified he saw some minor injuries on Petitioner. Deputy Shaun White saw bloodstains on Petitioner's shirt and forearm.

at 81.  The blows caused swelling and contusions on the victim's brain.  Ex.

E at 82.  After Dr. Minyard's testimony, the trial judge inquired of her

outside the presence of the jury as follows:

> THE COURT (to the jury):  . . . .  While you're on break, let's not discuss the case in any way.  But you're certainly free to talk back and forth and become better acquainted.
>
> (Jury out)
>
> THE COURT:  Were there multiple wound sites detected on Mr. Delmonico's skull, is that correct?
>
> THE WITNESS (Dr. Minyard):  That's correct.
>
> THE COURT:  Would that be consistent with more than one traumatic event or wound or striking of the skull?
>
> THE WITNESS:  That's correct.
>
> THE COURT:  Now can one blow to the skull cause multiple events or fractures?
>
> THE WITNESS:  Well, it can.  But they would - - the contact area of the one blow would be the area fractured. There wouldn't be several different fractures of the exterior surface.
>
> THE COURT:  All right.  So in this case, though, how many blows would there have been to Mr. Delmonico's skull?
>
> THE WITNESS:  I'd like to review the pictures.  I haven't been directly asked that before.
>
> THE COURT:  Right, okay.
>
> THE WITNESS:  At least three, though, from what I can - -
>
> THE COURT:  At least three?
>
> THE WITNESS:  Yes.
>
> THE COURT:  And that's what I wanted to be sure, that there were at least multiple blows or strikes to the skull.  More than just one?

THE WITNESS: Yes, sir.

Ex. E at 99-101.  The state was then allowed to recall Dr. Minyard to testify

before the jury, which testimony transpired as follows:

> Q (Prosecutor).  Dr. Minyard, I know when you testified on
> direct examination you mentioned several fractures of the skull
> and several lacerations.
>
> A.  Yes.
>
> Q.  Is that consistent with being struck more than one
> time?
>
> A.  Yes, it is.
>
> Q.  Approximately how many injuries did you see?
>
> A.  At least three.
>
> Q.  Could one blow to the head cause multiple fractures
> or lacerations?
>
> A.  Well it could in fact that one blow on the outer surface
> of the skull could cause enough force to fracture the inside of
> the skull.  But generally, when you have fractures of various
> parts of the outer part of the skull, no, those have to be
> separate individual blows.

Ex. E at 102-03.  No objection was made to the trial judge's questioning or

to the recalling of the medical examiner to impart this last information to the

jury.

During the defense case, Petitioner testified that he was living in a

trailer in the victim's backyard and that the victim was his landlord.

Petitioner said that, under the rental agreement, he had use of the house

as well, in order to use the kitchen and the bathroom.  Ex. E at 183.

Petitioner testified that when he went into the residence that day, the victim came from the kitchen and asked about rent. According to Petitioner, when he said he did not have it, the victim got angry and hit him in the head with his fist and then in the neck with a two-by-four board. Ex. E at 187. Petitioner told the jury he feared for his life so he grabbed the two-by-four and hit the victim with it three times. Ex. E at 187, 189.

During closing argument, the prosecutor argued, "One blow could have killed him. He hit him three times in the back of the head." Ex. F at 252. He later argued that all the blows were on the back of the victim's head and that "[h]e was hit from behind at least three times with massive force." Ex. F at 254. The prosecutor made reference to three blows with the two-by-four several more times in closing argument. *See* Ex. E at 258, 259, 260, 261.

The state courts adjudication of this claim, finding that fundamental error did not occur by the trial court questioning the medical examiner, is entitled to AEDPA deference and has not been shown to be objectively unreasonable. The medical examiner initially testified on direct examination to at least two large injuries to the victim's head. Thus, evidence was already before the jury from which it could reasonably infer that more than one blow was struck. The trial judge's questioning clarified

that at least three blows were struck.  In either case, the prosecutor could argue during closing that multiple blows was evidence of murder and not self-defense.

Under Florida law, "[a] court may question witnesses when required by the interests of justice.  Questioning may be necessary, in the court's discretion, to ascertain the truth or to clarify an issue."  R.O. v. State, 46 So. 3d 124, 126 (Fla. 3d DCA 2010) (citation omitted).  Section 90.615, Florida Statutes, provides that "[w]hen required by the interests of justice, the court may interrogate witnesses, whether called by the court or by a party."  § 90.615(2), Fla. Stat. (2011).  The questioning must not cause prejudice, and the judge must not depart from the strict neutrality required of his position.  Sims v. State, 184 So. 2d 217, 221 (Fla. 2d DCA 1966).

Federal Rule of Evidence 614 also provides that the court may examine a witness regardless of which party has called the witness.  *See* Fed. R. Evid. 614(b).  Under federal law, a trial judge has wide discretion in managing a trial, including questioning witnesses and eliciting facts not yet adduced, or clarifying facts previously presented.  *See* United States v. Day, 405 F.3d 1293, 1297 (11th Cir. 2005) (citing United States v. Hawkins, 661 F.2d 436, 450 (5th Cir. Unit B 1981)).  The trial judge is not relegated to silence or inaction during the criminal trial.  *See* United States v. Wright,

392 F.3d 1269, 1274 (11th Cir. 2004). A judge's participation deprives the parties of a fair trial only if the record shows the court departed from neutrality or expressed bias or prejudice. *Id.*

The questions posed by the trial judge in this case did not indicate any partiality to the prosecution, and were posed in order to clarify the medical examiner's earlier testimony that there were several large injuries to the victim's head causing serious skull fracturing and traumatic brain injury. "It is entirely proper for the trial court to make inquiries of a witness in order to clarify the evidence presented." Hanson v. Waller, 888 F.2d 806, 813 (11th Cir. 1989). The record demonstrates that the trial judge's questions to the medical examiner were not error and Petitioner was not prejudiced by the trial judge's clarification. Even without the judge's questions and the medical examiner's clarification, the prosecutor could have argued multiple blows were proven by the disparate locations of extensive fracturing that the medical examiner first testified to on direct examination.

Petitioner also contends that the trial court deprived him of due process by questioning him outside the presence of the jury. After Petitioner testified, and when the jury was not present, the trial court asked Petitioner to explain the chronology of events that happened the day the

Case 3:15-cv-00001-LC-CAS   Document 23   Filed 03/10/17   Page 20 of 77

victim was injured at his home.  Ex. F at 208-11.  Everything Petitioner

stated in response to the questions asked by the judge had previously been

stated to the jury, with the exception of portions of the following:

> (Jury out)
>
> . . . .
>
> THE COURT:  All right.  And he's hitting you with a two-by-four, but you're not frightened?
>
> THE DEFENDANT:  I must have been frightened because I grabbed it.  I grabbed it from him.
>
> THE COURT:  But you don't leave - - you've got the two-by-four in your hands now?
>
> THE DEFENDANT:  He was still coming at me and then I hit him.  I hit him to get him off me.
>
> THE COURT:  But you didn't try to leave?
>
> THE DEFENDANT:  Not at that point I wasn't.
>
> THE COURT:  He doesn't have the two-by-four anymore. You've got the two-by-four, right?
>
> THE DEFENDANT:  He was still coming at me so I hit him.
>
> THE COURT:  So at this point you're not frightened enough to just take the two-by-four and leave; you stay and retaliate and strike him?
>
> THE DEFENDANT:  I hit him back.  Yes, sir.
>
> THE COURT:  All right.  And then you hit him three times - - one, two three you say?
>
> THE DEFENDANT:  Yes.
>
> . . . .
>
> THE COURT:  And then you still don't leave at that point. Now he's down and he's unconscious?
>
> THE DEFENDANT:  I was getting ready to leave.  That's when somebody was coming in.

Ex. F at 208-10.  For the same reasons discussed above, the trial judge had discretion to question Petitioner in order to further clarify his testimony. The questioning was outside the presence of the jury and did not indicate any bias or position of advocacy concerning the facts being elicited.

Petitioner has failed to demonstrate, as is required under 28 U.S.C. § 2254(d), that the state court's adjudication of this claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court, or that it was based on an unreasonable determination of the facts in light of the evidence in the state court record.  Ground 1 should be denied.

## Ground 2: Jury Instruction on Justifiable Use of Force

In this ground, Petitioner contends that the trial court violated his Fifth, Sixth, and Fourteenth Amendment rights by giving a jury instruction on the justifiable use of force, which he argued imposed an erroneous duty to retreat.  ECF No. 1 at 6.  This claim was raised in Petitioner's direct appeal as fundamental error.  Ex. G at 21.  The state district court of appeal affirmed without explanation.  Ex. J.

The instruction at issue was a portion of the following instruction given to the jury:

An issue in this case is whether the Defendant acted in self-defense.  It is a defense to the offense with which Donald Verne is charged if the death of Peter Delmonico resulted from the justifiable use of deadly force.  Deadly force means force likely to cause death or great bodily harm.  The use of deadly force is justifiable only if the Defendant reasonably believes that the force is necessary to prevent imminent death or great bodily harm to himself while resisting another's attempt to murder him or any attempt to commit an aggravated battery upon him.

. . . .

A person is justified in using deadly force if he reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or the imminent commission of an aggravated battery against himself and I have previously defined aggravated battery for you.  However, the use of deadly force is not justifiable if you find that Donald Verne initially provoked the use of force against himself unless the force asserted toward the Defendant was so great that he reasonably believed that he was in imminent danger of death or great bodily harm and has exhausted every reasonable means to escape the danger other than using deadly force on Peter Delmonico or in good faith, the Defendant withdrew from physical contact with Peter Delmonico and clearly indicated to Peter Delmonico that he wanted to withdraw and stop the use of deadly force but Peter Delmonico continued or resumed the use of force. **In deciding whether the Defendant was justified in the use of deadly force, you must judge him by the circumstances by which he was surrounded at the time the force was used.  The danger facing the Defendant need not have been actual.  However, to justify the use of deadly force, the appearance of danger must have been so real that a reasonably cautious and prudent person under the same circumstances would have believed that the danger could be avoided only through the use of that force**.  Based upon appearances, the Defendant must have actually believed that danger was real. If the Defendant was not engaged in an unlawful activity and was attacked in any place where he had a right to be, he had no duty to retreat and had the right to stand his ground and meet force with force including deadly force if he reasonably believed that it was necessary to do so to

prevent death or great bodily harm to himself or to commit the
commission of a forcible felony; to wit, aggravated battery, and
aggravated battery has been defined for you earlier.

Ex. F at 288-90 (emphasis added).  This instruction, including the language

cited by Petitioner shown in bold, essentially tracks the language in Florida

Standard Jury Instruction (Crim.) 3.6(f), Justifiable Use of Deadly Force.

Petitioner argued in his direct appeal that instructing the jury with the

portion shown in bold resulted in fundamental error because it erroneously

imposed a duty on defendant to retreat.  Ex. G at 21.  He contended that

the stated language does not appear in any statutes and does not derive

from case law.  This contention ignores the significance of the rest of the

instruction, which advised the jury: "If the Defendant was not engaged in an

unlawful activity and was attacked in any place where he had a right to be,

he had no duty to retreat and had the right to stand his ground and meet

force with force including deadly force if he reasonably believed that it was

necessary to do so to prevent death or great bodily harm to himself."  Ex. E

at 290 (emphasis added).  This latter language tracks the language

regarding no duty to retreat in section 776.013(3), Florida Statutes (2011),

in effect at the time of Petitioner's trial.[7]

---

[7] Section 776.013(3) was amended in 2014 to provide that a person who is attacked in
their dwelling, residence, or vehicle has the right to stand his or her ground and use
force, including deadly force, if done in accordance with section 776.012(1) or (2) or

The trial court gave the standard jury instruction approved by the Florida Supreme Court, and that jury instruction informed the jury that the defendant had no duty to retreat if he was in a place he had a right to be and was not engaged in an unlawful activity.  The trial court therefore did not err in giving this instruction.  Respondent correctly contends that it was the jury's role to determine if the facts demonstrated Petitioner had no duty to retreat to avoid injury under the correct instruction as given.  Respondent also correctly contends that the claim lacks merit because the instruction correctly informs the jury that a defendant who is not an initial aggressor has no duty to retreat

The Florida Supreme Court has held that the standard jury instruction 3.6(f) regarding justifiable use of deadly force "accurately and correctly explains this law to the jury with regard to the factually complex situations where the jury must unwind the facts to determine who was the initial aggressor."  <u>State v. Floyd</u>, 186 So. 3d 1013, 1020-21 (Fla. 2016).  The

---

section 776.031(1) or (2), Florida Statutes.  *See* ch. 2014-195, s.4, Laws of Fla.  Section 776.012(2), referred to in the "Stand Your Ground" statute, states that deadly force is justified in defense of person if the person reasonably believes it to be necessary to prevent death or great bodily harm, but only if the person using deadly force is not engaged in criminal activity and is in a place he or she has a right to be.  Section 776.031(2) states deadly force is justified in defense of property if the person reasonably believes it is necessary to prevent a forcible felony, but only if the person using deadly force is not engaged in criminal activity and is in a place he or she has a right to be.  The jury instruction in Petitioner's trial did not conflict with these amendments.

court in <u>Floyd</u> rejected the contention that the instruction on justifiable use of force was confusing. *Id.* at 1021. The Florida Supreme Court in <u>Floyd</u> further explained:

> Moreover, the justifiable use of force is recognized as a somewhat complex area of law that will necessarily yield complex jury instructions. Considering a defendant's invocation of the "Stand Your Ground" law alone, a jury must make at least four factual findings. The jury must determine (1) whether the defendant was not engaged in unlawful activity; (2) whether he was attacked; (3) whether he was somewhere he had a right to be; and (4) whether he reasonably believed it was necessary to use force.

> The question of the applicability of the initial aggressor exception adds even more factual variables to the justifiable use of force equation. With regard to the initial aggressor exception, the jury must determine whether the defendant initially provoked the use of force against himself. If the jury finds that he did, then it must determine: (1) whether he reasonably believed that the provoked force threatened him with danger of death or great bodily harm; (2) whether he reasonably believed that the threatened danger was imminent; and (3) whether he exhausted every reasonable means to escape before using force to defend himself against the provoked force. Unfortunately, the decision process does not end there. In addition to retreating, an initial aggressor defendant may alternatively use justifiable force if he withdrew in good faith. This alternate basis requires the jury to determine: (1) whether he withdrew; (2) whether he communicated his desire to withdraw; (3) whether he did so in good faith; and (4) whether the other person continued to use force. Thus, when a defendant invokes his right to stand his ground and there are questions concerning who was the initial aggressor, the jury may be instructed to make at least twelve related but independent factual findings.

> As a result of these many questions of fact, there may certainly be many correct ways to instruct the jury with regard to

> organization, terminology, and emphasis. The most important
> consideration, however, is that the instructions correctly guide
> the jury, which these do.

*Id.* at 1022.  Thus, the instruction given in Petitioner's trial correctly stated

Florida law, including his right to stand his ground and meet force with

force.

Moreover, the correctness and sufficiency of the jury instruction to

accurately reflect Florida law is a state law issue not cognizable in this

§ 2254 proceeding.  Questions of state law rarely raise issues of federal

constitutional significance because a state's interpretation of its own laws

does not involve a federal constitutional question, Tejada v. Dugger, 941

F.2d 1551, 1560 (11th Cir. 1991), even where the issue is couched in terms

of equal protection and due process or other constitutional provisions.  *See*

Branan v. Booth, 861 F.2d 1507, 1508 (11th Cir. 1998); Brown v. Warden,

562 F. App'x 779, 781 (11th Cir. 2014) (unpublished) (citing Williams v.

Allen, 598 F.3d 778, 800-02 (11th Cir. 2010) (in a habeas corpus action,

relying on state law to establish whether jury instructions were properly

given)).

Even if this jury instruction, and the state appellate court's ruling

rejecting Petitioner's claim of error, were erroneous, the federal courts

"have long recognized that 'a mere error of state law' is not a denial of due

process." Swarthout, 562 U.S. at 222 (quoting Engle v. Isaac, 456 U.S. 107, 121, n.21 (1982)).  It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); *see also* Carrizales v. Wainwright, 699 F.2d 1053, 1054-55 (11th Cir. 1983).  A claim grounded on issues of state law provides no basis for federal habeas relief because a violation of a state statute or rule of procedure is not, in itself, a violation of the federal constitution.  Engle, 456 U.S. at 120-21; Branan, 861 F.2d at 1508.

"A jury instruction that 'was allegedly incorrect under state law is not a basis for habeas relief,' " and the federal court is constrained on habeas review to determine only whether the challenged instruction, viewed in the context of both the entire charge and the trial record, " 'so infected the entire trial that the resulting conviction violated due process.' " Jamerson v. Sec'y for Dep't of Corr., 410 F.3d 682, 688 (11th Cir. 2005) (quoting Estelle, 502 U.S. at 72).  Thus, even if state law error occurred, the Eleventh Circuit has made clear that federal habeas relief will only be granted for state law errors that were so critical they rendered the entire trial fundamentally unfair in violation of the right to due process.  *Id*.; Branan, 861 F.2d at 1508.  This showing has not been made.  The jury was instructed that under certain circumstances, Petitioner had no duty to

retreat.  It was the jury's role to determine if those circumstances were met. Petitioner has not shown that any error in jury instruction "so infected the entire trial" that his conviction is a violation of due process.

Petitioner has failed to demonstrate pursuant to 28 U.S.C. § 2254(d) that the state court's adjudication of this claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court, or that it was based on an unreasonable determination of the facts in light of the evidence in the state court record.  Accordingly, Ground 2 should be denied.

### **Ground 3: Failure to Instruct on "Stand Your Ground" Immunity**

Petitioner contends in Ground 3 that the trial court violated his Fifth, Sixth, and Fourteenth Amendment rights by failing to instruct the jury on Florida's "Stand Your Ground" immunity.  ECF No. 1 at 7.  This claim was raised in Petitioner's direct appeal as fundamental error.  Ex. G at 26.  He contended there that Florida law requires that if the case is not dismissed prior to trial based on the "Stand Your Ground" law, the jury must be instructed on the immunity issue.  He further contended that the instruction that was given was not an adequate substitute for a "Stand Your Ground"

immunity instruction.  In so arguing, Petitioner cited the following portion of the instructions given at his trial:

> If the Defendant was not engaged in an unlawful activity and was attacked in any place where he had a right to be, he had no duty to retreat and had the right to stand his ground and meet force with force including deadly force if he reasonably believed that it was necessary to do so to prevent death or great bodily harm to himself or to commit the commission of a forcible felony; to wit, aggravated battery, and aggravated battery has been defined for you earlier.

Ex. E at 290.  Although Petitioner conceded there is no standard jury instruction on "Stand Your Ground" immunity, he contended that such an instruction could be crafted from the text of section 776.013(3).  The instruction cited above actually tracks the language of that statute, which Petitioner cited as being sufficient.  This instruction also correctly stated the lack of duty to retreat under the "Stand Your Ground" law.  *See* Floyd, 186 So. 3d at 1022; Navarro v. State, 190 So. 3d 212, 214 (Fla. 4th DCA 2016).

Petitioner further argued his trial instruction was insufficient in this case because "it must be presumed that the jury erroneously understood the instructions to impose a duty to retreat."  Ex. G at 27.  For that proposition, he cited a portion of the instructions which stated:

> The danger facing the Defendant need not have been actual. However, to justify the use of deadly force, the appearance of danger must have been so real that a reasonably cautious and prudent person under the same circumstances would have

believed that the danger could be avoided only through the use
of that force.

Ex. E at 290.  This is a portion of the same standard jury instruction on

justifiable use of force discussed in Ground 2 above and makes no mention

of a duty to retreat.  It is directed at determining the reasonableness of the

belief that such force is necessary before deadly force is justified—a

determination that is required under the "Stand Your Ground" law and the

requirements of the statutory provisions set forth in that law.

Section 776.032(1), Florida Statutes (2011), the "Stand Your Ground"

law immunity provision, provided in pertinent part as follows:

> 776.032 Immunity from criminal prosecution and civil
> action for justifiable use or threatened use of force.—
>
> (1)  A person who uses force as permitted in s. 776.012,
> s. 776.013, or s. 776.031 is justified in using such force and is
> immune from criminal prosecution and civil action for the use of
> such force, unless the person against whom force was used is
> a law enforcement officer, . . . .

§ 776.032(1), Fla. Stat. (2011).  Section 776.012, one of the predicate

statutes referred to in the "Stand Your Ground" law, provided in pertinent

part:

> . . . a person is justified in the use of deadly force and does not
> have a duty to retreat if:
>
> (1) He or she reasonably believes that such force is
> necessary to prevent imminent death or great bodily harm to
> himself or herself or another or to prevent the imminent
> commission of a forcible felony.

§ 776.012(1)(1), Fla. Stat. (2011).  The substance of this provision was

given in the instructions in Petitioner's trial.

Section 776.013, also referred to in the "Stand Your Ground" statute,

provides that a person is presumed to have held a reasonable fear of

imminent peril of death or great bodily harm under certain circumstances,

including when the person against whom force is used has unlawfully

entered the occupied dwelling or vehicle.  § 776.013(1)(a), Fla. Stat.

(2011).  Another portion of that statute, applicable here, provides as

follows:

> (3)  A person who is not engaged in an unlawful activity
> and who is attacked in any other place where he or she has a
> right to be has no duty to retreat and has the right to stand his
> or her ground and meet force with force, including deadly force
> if he or she reasonably believes is necessary to do so to
> prevent death or great bodily harm to himself or herself or to
> another or to prevent the commission of a forcible felony.

§ 776.013(3), Fla. Stat. (2011).  This instruction was also given to the jury

in Petitioner's trial.  Finally, section 776.031, also referred to in the "Stand

Your Ground" statute, is a provision governing use of force in defense of

others and was not applicable to the facts in Petitioner's case.

Petitioner first contended that other portions of the instructions given

in his case were confusing regarding Petitioner's duty to retreat; however,

the jury was correctly instructed on the applicable law, which made clear

under what circumstances a person may stand their ground and use deadly force and under what circumstances they may not.  As noted in Ground 2 above, the Florida Supreme Court has held that the standard jury instruction 3.6(f) regarding justifiable use of deadly force "accurately and correctly explains this law to the jury with regard to the factually complex situations where the jury must unwind the facts to determine who was the initial aggressor."  State v. Floyd, 186 So. 3d 1013, 1020-21 (Fla. 2016). The Court noted that, considering a defendant's invocation of the "Stand Your Ground" law, a jury must make at least four factual findings: (1) whether the defendant was not engaged in unlawful activity; (2) whether he was attacked; (3) whether he was somewhere he had a right to be; and (4) whether he reasonably believed it was necessary to use force.  *Id.* at 1022. The Florida Supreme Court also held that "there may certainly be many correct ways to instruct the jury with regard to organization, terminology, and emphasis."  *Id.*  The most important consideration, the Court stated, "is that the instructions correctly guide the jury, which these do."  *Id.* Accordingly, the court in Floyd rejected the contention that the instruction on justifiable use of force was confusing.  *Id.* at 1021.

The jury in Petitioner's case was properly instructed concerning the requirements for application of Florida's "Stand Your Ground" law.  He

argues, however, that the jury should have been required to make a specific immunity determination under the "Stand Your Ground" law before deciding if he acted in self-defense or was justified in using deadly force. Petitioner has cited no authority requiring or allowing the jury to make an immunity determination in cases where the judge has denied the motion before trial.

Petitioner contended on direct appeal that because the judge denied his motion for "Stand Your Ground" immunity under section 776.032, Florida Statutes, he was entitled to have the jury make a determination of immunity under that statute apart from deciding on guilt or innocence. For the proposition that the jury must make an immunity determination before considering the standard jury instructions and question of justifiable use of deadly force, Petitioner cited Peterson v. State, 983 So. 2d 27 (Fla. 1st DCA 2008). *See* Ex. G at 30. Nothing in Peterson addressed the question of a jury determination of immunity. Peterson, and the Florida Supreme Court in Dennis v. State, 51 So. 3d 456 (Fla. 2010), held that a trial judge must hold a pretrial hearing on the question of immunity under the "Stand Your Ground" law and must resolve factual disputes in that motion. The Court in Dennis stated, "We conclude that where a criminal defendant files a motion to dismiss on the basis of section 776.032, the trial court should

decide the factual question of the applicability of the statutory immunity," rather than deny the motion on the grounds that there were disputed issues of fact. *Id.* at 457.  In so holding, the Florida Supreme Court approved the reasoning in Peterson.

Neither Peterson nor Dennis provide authority to find that the jury should have been instructed on a finding of immunity to prosecution under the "Stand Your Ground" law.  In fact, Peterson stated, "Petitioner is not precluded from submitted the matter to the jury as an affirmative defense in his criminal trial."  Peterson, 983 So. 2d at 29.  That is what occurred in Petitioner's trial after his pretrial motion for "Stand Your Ground" immunity was denied.  In Bretherick v. State, 170 So. 3d 766 (Fla. 2015), the Florida Supreme Court again noted, in approving the district court of appeal's decision, that when the defendant's pretrial motion for "Stand Your Ground" immunity was denied, the defendant was not prevented from presenting self-defense as an affirmative defense at trial.  *Id.* at 771.

For all these reasons, Petitioner has not demonstrated trial court error in the jury instructions or in the failure to instruct the jury on the question of immunity from prosecution under the "Stand Your Ground" law.  Moreover, as discussed above, even if error had been shown, it is not cognizable in this federal habeas proceeding.  " '[A] mere error of state law' is not a

denial of due process." Swarthout, 562 U.S. at 222 (quoting Engle, 456 U.S. at 121, n.21). It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Estelle, 502 U.S. at 67. A federal court is constrained on habeas review to determine only whether the challenged instruction, viewed in the context of both the entire charge and the trial record, "so infected the entire trial that the resulting conviction violated due process." Jamerson, 410 F.3d at 688 (quoting Estelle, 502 U.S. at 72). Thus, even if state law error occurred, the Eleventh Circuit has made clear that federal habeas relief will only be granted for state law errors that were so critical they rendered the entire trial fundamentally unfair in violation of the right to due process. *Id*.; Branan, 861 F.2d at 1508. This showing has not been made.

Petitioner has failed to demonstrate that the state court's adjudication of this claim resulted in a decision that is contrary to, or involving an unreasonable application of, federal law, as determined by the Supreme Court, or is an unreasonable determination of the facts in light of the record. Ground 3 should, therefore, be denied.

## Ground 4: Failure to Present Exculpatory Witness

Petitioner next contends that his trial counsel rendered ineffective assistance by failing to interview, depose, or call as a witness Paul Koski,

who, Petitioner alleges, would have provided exculpatory evidence. ECF No. 1 at 9. This claim was presented to the state court in Petitioner's "Amended Supplement Motion for Postconviction Relief." Ex. P at 185. Applying the standards set forth in <u>Strickland</u>, the trial court denied the claim without a hearing. Ex. P at 218-222. Petitioner appealed the denial of relief to the state First District Court of Appeal, which affirmed per curiam without opinion. Ex. Q. Respondent contends the state court's denial of this claim was correct because counsel's decision not to call Koski was reasonable in light of his strategy focusing on self-defense. ECF No. 13 at 20-21.

Petitioner alleged in his post-conviction claim that Koski's testimony was relevant and exculpatory in that it contradicted testimony of the State's witnesses on the issue of whether, at the time of the incident, Petitioner was drunk, angry, upset, or had any intention to do bodily harm. Ex. P at 187. Petitioner also alleged in his motion in the post-conviction court that when requested to depose and present the testimony of Paul Koski, trial counsel failed to do so, "stating to the defendant that it was unnecessary, and that his 'stand your ground' immunity was sufficient in and of itself for protection against prosecution and conviction." Ex. P at 185. The trial testimony that Petitioner alleges would have been contradicted was

primarily that of Brigid Kish, who testified that around 4:40 p.m. on the afternoon of the incident, she saw Petitioner at Sam's Lounge.  Ex. E at 147-48.  She testified that Petitioner told her he had been drinking all day at a bar called "The Blind Mule," and that he looked tired with bloodshot eyes. She said he looked very drunk.  Ex. E at 148.  Kish testified that when she was leaving, Petitioner appeared agitated and said, "I'm going to fuck somebody up," but did not say who.  Ex. E at 149.

Petitioner argued in the state court that the prosecutor used her testimony to argue to the jury that Petitioner was drunk and acted with depraved mind.  Ex. P at 186.  When Petitioner testified at trial, he told the jury he had a total of six beers and was not drunk.  He denied telling Kish he wanted to "mess somebody up."  Ex. E at 184-86.  Petitioner attached an affidavit of Koski to his motion in which Koski stated he was at Sam's Bar on July 29, 2010, and conversed with Petitioner.  Koski stated in the affidavit that he and Petitioner were talking about a job; Kish came over and said she was leaving; Kish asked Petitioner if he knew of anyone who had "lower tabs in the bar" to which Petitioner answered, "no;" Kish left and, when Petitioner and Koski finished talking, Petitioner left the bar at 6:10 p.m., saying he was going home to take a shower.  Ex. O at 61.

The trial court's order denying post-conviction relief on this claim stated in pertinent part as follows:

> Defendant's own allegation shows that counsel's decision not to call Koski as a witness was strategic. Defendant alleges that counsel told him that Koski's testimony was unnecessary, and that [Defendant's] "stand your ground" immunity was sufficient in and of itself for protection against prosecution and conviction." This allegation shows that counsel had considered the option of interviewing and calling Koski but had decided to forgo that option in favor of a different strategy. The fact that the chosen strategy did not result in Defendant's acquittal does not make the strategy unreasonable.
>
> Furthermore, the Court does not find counsel's strategy to have been unreasonable. Counsel is not ineffective for failing to call witnesses whose testimony would be merely cumulative. *See* Darling v. State, 966 So. 2d 366, 378 (Fla. 2007). The Court finds that much of Koski's purported testimony would have been cumulative.
>
> First, the affidavit indicates that Koski would have testified that Defendant was not intoxicated. As Defendant points out, several credible witnesses testified at trial that, within a short time of the altercation, Defendant did not seem intoxicated. . . .

Ex. P at 219. The trial court gave several more reasons why the strategic decision not to call Koski to testify was reasonable. *See* Ex. P at 220-21. The trial court further found that Petitioner failed to demonstrate prejudice because, in pertinent part, he failed to show "that Koski's testimony would have added anything of value to the testimony adduced at trial and in turn changed the outcome of the trial." Ex. P at 222.

Koski's affidavit does not state that Petitioner was not intoxicated. It also does not deny that Petitioner made any statement about wanting to

mess somebody up.  As the trial court found, to the extent the testimony could prove that Petitioner was not intoxicated, several other witnesses also testified to that fact, including Petitioner himself.[8]  Koski's testimony would therefore have been cumulative, and as the trial court found, would not have added anything to, or made an appreciable difference in, the evidence.  Trial counsel is not deficient in failing to present cumulative testimony, even if it were to provide more detail than the other witnesses. *See* Darling v. State, 966 So. 2d 366, 377 (Fla. 2007); s*ee also* Darling v. Sec'y, Dep't of Corr., 619 F.3d 1279, 1284 (11th Cir. 2010) (finding state court adjudication that trial counsel was not ineffective in failing to present cumulative evidence was not unreasonable).  The Eleventh Circuit has explained that the test for ineffective assistance of counsel

> has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial.  Courts also should at the start presume effectiveness and should always avoid second guessing with the benefit of hindsight.  Strickland encourages reviewing courts to allow

---

[8] Officer Kevin Coxwell, lead investigator, responded to the scene and met with Petitioner about one hour after the call.  Ex. E at 156.  He did not note any odor of alcohol on Petitioner, who did not seem intoxicated.  Defense counsel presented Michael Straw, an acquaintance of Petitioner, who testified that he talked with Petitioner at The Blind Mule bar on the afternoon of the incident, and Petitioner did not appear intoxicated, upset, or irritated.  Ex. F at 228-29. Shaun White, the patrol deputy, took Petitioner into custody shortly after law enforcement responded to the call.  Ex. F at 233.  He noticed no odor of alcohol on Petitioner, who did not appear intoxicated.  Ex. F at 234.

lawyers broad discretion to represent their clients by pursuing their own strategy.  We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

White v. Singletary, 972 F.2d 1218, 1220-21 (11th Cir. 1992) (citation omitted).  "[T]he cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." Rogers v. Zant, 13 F.3d 384, 386 (11th Cir. 1994).  Petitioner has not demonstrated in this claim that this is one of those cases and that trial counsel's decision was deficient.

The cumulative nature of Koski's proposed testimony also supports the finding that prejudice has not been shown.  *See* Wong v. Belmontes, 558 U.S. 15, 22 (2009) (per curiam) (rejecting the argument that petitioner established Strickland prejudice when the additional evidence that counsel failed to introduce was cumulative with the substantial mitigation evidence that had been presented to the jury); *see also* Stewart v. Dugger, 877 F.2d 851, 856 (11th Cir. 1989) (observing that additional character witnesses "would not have had an effect on [the jury's] verdict" because "[s]uch testimony would have merely been cumulative"); Morris v. Sec'y, Dep't of Corr., 677 F.3d 1117, 1130 (11th Cir. 2012).

The jury heard from several credible witnesses that Petitioner did not appear intoxicated and acted calmly around the time the crime was

discovered.  Moreover, Petitioner's defense at trial was self-defense and justifiable use of deadly force.  The jury rejected the claim of self-defense and found Petitioner guilty of second-degree murder.  Petitioner has failed to establish a reasonable probability that, but for counsel's alleged error in failing to call Koski to testify, he would have been acquitted—a reasonable probability being one sufficient to undermine confidence in the outcome. Strickland, 466 U.S. at 694.

The state court's adjudication of this claim—finding Petitioner failed to demonstrate ineffective assistance of counsel under the standards set forth in Strickland—has not been shown to have been unreasonable.  Under the AEDPA, "[t]he question 'is not whether a federal court believes the state court's determination' under the Strickland standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.' " Mirzayance, 556 U.S. at 123 (quoting Schriro, 550 U.S. at 473).  The Strickland standard is a general standard and a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard.  See Mirzayance, 556 U.S. at 123.  "The pivotal question is whether the state court's application of the Strickland standard was unreasonable," which is different from asking whether defense counsel's performance fell below Strickland's standard.  Richter, 562 U.S.

at 101.  A state court's determination that a <u>Strickland</u> claim lacks merit

precludes federal habeas relief so long as "fairminded jurists could

disagree" on the correctness of the decision.  *Id.* (quoting <u>Yarborough v.</u>

<u>Alvarado</u>, 541 U.S. 652, 664 (2004)).

Given the record support for the state court's adjudication of this

claim concluding that counsel was not deficient and that prejudice had not

been established, the decision was not contrary to, or an unreasonable

application of, <u>Strickland</u> or any other Supreme Court precedent.  Nor does

Petitioner show that the state court's conclusions were based upon an

unreasonable determination of the facts in light of the evidence presented

in the state court proceedings.  Accordingly, Ground 4 should be denied.

## **Ground 5: Failure to Object to Justifiable Use of Force Instruction**

Petitioner alleges in this claim that trial counsel rendered ineffective

assistance by failing to object to the jury instruction on justifiable use of

deadly force, which he contends was invalid because, he claims, the

Florida Supreme Court invalidated the "duty to retreat" requirement.[9]  ECF

---

[9] Petitioner does not cite a Florida Supreme Court case invalidating the jury instruction given in his case.  In his reply in this Court, Petitioner cites <u>Floyd v. State</u>, 151 So. 3d 452 (Fla. 1st DCA 2014), as a case invalidating portions of the justifiable use of deadly force instruction, ECF No. 18 at 2, but that case was quashed by the Florida Supreme Court in <u>State v. Floyd</u>, 186 So. 3d 1013, 1023 (Fla. 2016), concluding that the instruction on justifiable use of deadly force does not provide conflicting instruction on the duty to retreat.

No. 1 at 10.  He raised this claim in his motion for post-conviction relief, contending that trial counsel should have objected on the ground that the standard jury instruction on justifiable use of deadly force erroneously imposed a duty to retreat and was confusing.  Ex. O at 159-62.  The claim was denied and the appellate court affirmed.  Ex. Q.

The post-conviction court denied the claim, finding that the trial court gave the standard instruction accurately.  For the same reasons discussed in Grounds 2 and 3, this claim lacks merit and should be denied.  The jury instruction has been held by the Florida Supreme Court to accurately instruct the jury on the justifiable use of deadly force.  And it accurately instructs the jury on the circumstances—based on the Florida Statutes— under which a person has a duty to retreat or, conversely, may stand their ground and use force against force.  The court held that the instruction "accurately and correctly explains this law to the jury with regard to the factually complex situations where the jury must unwind the facts to determine who was the initial aggressor."  Floyd, 186 So. 3d at 1020-21.

Moreover, an attorney is not deficient in failing to object to a standard jury instruction that has not been invalidated by the court.  Lukehart v. State, 70 So. 3d 503, 520 (Fla. 2011).  Thus, as the post-conviction court concluded, "any objection that trial counsel would have made to the jury

instruction would have been overruled and affirmed on appeal." *See id.*

Counsel cannot be deemed ineffective for failing to make a meritless

argument. *Id.* at 521 (citing Evans v. State, 975 So. 2d 1035, 1043 (Fla.

2007)).

For these reasons, Petitioner has not demonstrated that the state

court's adjudication of this claim resulted in a decision that was contrary to,

or involving an unreasonable application of, federal law, as determined by

the Supreme Court, or that it was an unreasonable determination of the

facts in light of the state court record.  Ground 5 should be denied.

## Ground 6: Failure to Ensure a "Stand Your Ground" Instruction

Petitioner appears to contend in this ground that trial counsel

rendered ineffective assistance by failing to ensure that the trial court

instructed the jury on "Stand Your Ground" immunity and by failing to object

to the lack of such an instruction.[10]  ECF No. 1 at 12.  In Issue 3 of

Petitioner's Rule 3.850 motion, he claimed that counsel was ineffective in

failing to object to the trial court's error "in failing to instruct the jury on

_____

[10] This claim is confusing because he actually states "counsel failed to object to the
court's instructing the jury on the "stand your ground" law of immunity, instead
erroneously instructing them on Petitioner's duty to retreat."  ECF No. 1 at 12.  In
Ground 3, Petitioner contended that the jury was required to be instructed on the "Stand
Your Ground" law of immunity.  It is assumed that he does not intend to make internally
contradictory claims in this proceeding.

Florida's 'Stand Your Ground' immunity."  Ex. O at 162.  The post-

conviction court denied the claim, stating in pertinent part:

> Defendant's allegation in this ground is not a model of clarity.  The Court understands Defendant to be arguing that his counsel was ineffective for "fail[ing] to object to the trial court's fundamental error [in] failing to instruct the [j]ury on Florida's 'stand your ground' immunity."  Defendant appears to be arguing that the instructions given were legally inaccurate and misleading to the jury.
>
> Defendant quotes various jury instructions given at trial and makes generalized allegations that the instructions were "not an adequate substitute for the 'stand your ground' law" and that the instructions as given were "conflicting."  He alleges that the instructions improperly added a "duty to retreat" and improperly omitted the conclusive presumption of reasonable fear afforded defendants under the stand-your-ground law. Defendant does not, however, allege what instructions should have been given in place of the ones he now challenges.  Also, Defendant does not indicate how a simple objection from counsel would have affected the outcome of the case, because, as noted above, the instructions were standard jury instructions and an objection to them would have been overruled.  The allegation cannot entitle Defendant to relief.

Ex. P. at 223-24 (footnote omitted).  The state appellate court affirmed.  Ex.

Q.  The Respondent contends that the jury instructions given at trial were

correct and counsel cannot be deficient in failing to object to them.  ECF

No. 13 at 23.

As discussed in Ground 2 above, the Florida Supreme Court has held

that the standard jury instruction 3.6(f) regarding justifiable use of deadly

force "accurately and correctly explains this law" of justifiable use of force.

*See* Floyd, 186 So. 3d at 1020.  The Florida Supreme Court in Floyd further

explained that the instruction also covers the considerations arising from

the "Stand Your Ground" law, stating:

> Moreover, the justifiable use of force is recognized as a
> somewhat complex area of law that will necessarily yield
> complex jury instructions.  Considering a defendant's invocation
> of the "Stand Your Ground" law alone, a jury must make at least
> four factual findings.  The jury must determine (1) whether the
> defendant was not engaged in unlawful activity; (2) whether he
> was attacked; (3) whether he was somewhere he had a right to
> be; and (4) whether he reasonably believed it was necessary to
> use force.
>
> . . . .
>
> As a result of these many questions of fact, there may
> certainly be many correct ways to instruct the jury with regard to
> organization, terminology, and emphasis. The most important
> consideration, however, is that the instructions correctly guide
> the jury, which these do.

*Id.* at 1022.  Therefore, the standard instruction on justifiable use of force

given in this case provided the jury with all the instruction it needed to apply

the "Stand Your Ground" statutory considerations to Petitioner's claim of

self-defense.

In Ground 3 above, the provisions of the "Stand Your Ground"

statute, and the predicate statutes which must be met before "Stand Your

Ground" applies, demonstrate that the instructions given in this case

comprehensively instructed the jury on all elements of the law.  Trial

counsel was not deficient in failing to object to the instructions given, which

tracked the standard instructions.  *See* <u>Lukehart</u>, 70 So. 3d at 520.  Thus, as the post-conviction court concluded, "the instructions were standard jury instructions and an objection to them would have been overruled."  Ex. P at 224; s*ee id.*  Counsel cannot be deemed ineffective for failing to make a meritless argument.  *Id.* at 521 (citing <u>Evans</u>, 975 So. 2d at 1043).  Nor was counsel deficient in failing to provide a special "Stand Your Ground" jury instruction to the Court because the instructions as given provided the jurors with the applicable law on self-defense, justifiable use of force, "Stand Your Ground" protections, and the circumstances under which those protections do not apply.[11]

The jury rejected Petitioner's claim that he was attacked and was justified in responding with deadly force.  This determination was made under proper and complete jury instructions.  Petitioner has not shown a reasonable probability that but for counsel's failure to object and failure to request a special instruction on "Stand Your Ground" law, which to a large extent would have repeated what the jury already heard, the trial would have resulted in a verdict of not guilty.  He has failed to provide a basis on which this Court can find that the confidence in the outcome of the trial is undermined.

---

[11] *See also* Ground 3 <u>supra</u>.

Petitioner has failed to show that the trial court's adjudication of this

Strickland claim was unreasonable.  The adjudication did not result in a

decision that is contrary to United States Supreme Court precedent, or is

an unreasonable application of that precedent, or that it was an

unreasonable determination of the facts in light of the state court record.

The requirements of 28 U.S.C. § 2254(d) have not been met and this

ground should be denied.

### Ground 7: Counsel's Failure to Object to Exclusion of Evidence

Petitioner claims that trial counsel rendered ineffective assistance by

failing to object to exclusion of all evidence of the victim's propensity for

violence, which he contends was relevant to his defense.  ECF No. 1 at 14.

He argues, "Counsel's failure to object to the exclusion of any reference to

the victim's violent nature, during 'any' stage of the proceedings literally

denied Petitioner a fair opportunity to present relevant evidence to support

the fact that [Petitioner] was not the aggressor."  ECF No. 1 at 14.

This claim was raised in Petitioner's Rule 3.850 motion in the trial

court, contending that the victim was a drug dealer who, for that reason,

was violent toward anyone who owed him money, as did Petitioner.  Ex. O

at 169-70.  Petitioner contended in his claim that the State filed a motion in

limine to exclude reference to the victim's drug dealing or drug use, but not

propensity for violence.  He contends that drug dealing and propensity for violence were intertwined and thus drug dealing and drug use were relevant to his defense of self-defense and his right to stand his ground. He argues that his counsel should have objected to exclusion of testimony from Katie Thomas, Brigid Kish, and Michael Straw on that ground.  Ex. O at 170.

The post-conviction court denied the claim, noting that counsel did attempt to present testimony from Katie Thomas about the victim's illicit activities. The post-conviction court also noted that Petitioner failed to say what statements Kish and Straw could have made that were improperly excluded.  The court also concluded that prejudice had not been shown because testimony regarding the victim's reputation for violence in the community was introduced at trial—Straw testified that the victim had a reputation for violence.  Ex. P at 228.  The state First District Court of Appeal affirmed denial of this claim.  Ex. Q.

Michael Straw testified that he had known the victim "over the years" and that the victim had a reputation for being violent.  Ex. F at 228.  In addition, during Katie Thomas's testimony, defense counsel advised the court that he wanted to elicit testimony from Thomas about the victim's drug dealing and supplemental income, and the fact that Thomas had

observed the victim selling drugs.  Ex. E at 67.  The State responded that there was a motion in limine in place to preclude that evidence, and the trial court denied defense counsel's request.  Ex. E at 67-68.

The motion in limine and order are not in the record, but the transcript makes clear that prior to trial the court ruled inadmissible any evidence of the victim's involvement in illegal drugs.  The trial court's ruling on the motion in limine was not claimed as error in the direct appeal from conviction and sentence.  *See* Ex. G.

The post-conviction court's finding that trial counsel was not ineffective was not unreasonable.  Trial counsel did present evidence that the victim was violent and did attempt to present evidence of his drug use.  Further, Petitioner cannot demonstrate that if counsel had objected further, the result of the trial would have been different.

> As explained by the Supreme Court in Williams v. Taylor, 529 U.S. 362 (2000), § 2254(d)(1) consists of two distinct clauses: a "contrary to" clause and an "unreasonable application" clause. The "contrary to" clause allows for relief only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Id.* at 413 (plurality opinion).  The "unreasonable application" clause allows for relief only "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*

Tharpe v. Warden, 834 F.3d 1323, 1337 (11th Cir. 2016).  "A petitioner

must show that the state court's decision was " 'objectively unreasonable,'

not merely wrong; even 'clear error' will not suffice."  *Id.* at 1338 (quoting

White v. Woodall, 134 S.Ct. 1697, 1702 (2014) (quotation marks omitted)).

"If this standard is difficult to meet, that is because it was meant to be."

Tharpe, 834 F.3d at 1338 (quoting Richter, 562 U.S. at 102).

Petitioner has not made these required showings.  Thus, he has

failed to demonstrate that that the state courts' adjudication of this claim is

contrary to, or involving an unreasonable application of Strickland, or any

other clearly established federal law, as determined by the Supreme Court,

or that the adjudications resulted in an unreasonable determination of the

facts in light of the evidence presented in the state court proceeding.

Ground 7 should, therefore, be denied.

### **Ground 8: Counsel's Failure to Object to Judge's Questions**

In this claim, Petitioner contends that trial counsel rendered

ineffective assistance by failing to object to the trial judge's departure from

his position as a neutral and impartial magistrate when the judge

questioned the medical examiner and Petitioner.  ECF No. 1 at 15.  In

Ground 1 above, Petitioner claimed that the trial court erred in questioning

the medical examiner and him outside the presence of the jury.  The

propriety of the trial judge's actions was discussed in detail in Ground 1,

where it was concluded that the trial judge did not err.

This claim of ineffective assistance of counsel was raised in

Petitioner's Rule 3.850 motion and denied by the state court.  Ex. O at 172;

Ex. P at 229.  In denying the claim, the post-conviction court stated:

> In this ground, Defendant alleges that counsel was ineffective when he failed to object to the Court's abandoning its position of neutrality by asking questions of the witnesses. Defendant alleges that the judge questioned the medical examiner in the presence of the jury about the number of blows to the victim's head.  Defendant also alleges that the Court questioned him extensively while he was testifying in his own behalf.  Defendant argues that the Court's actions deprived him of a fair and impartial tribunal.
>
> Initially, the Court would note that the Court's questions both of the medical examiner and of Defendant were asked outside the presence of the jury.  With regard to the Court's questions of Defendant, Defendant has pointed to no action by the Court after this questioning that would show any bias against Defendant.  Defendant has not shown how the Court's questions of him in any way prejudiced him.
>
> Furthermore, with regard to the Court's questions of the medical examiner, Defendant points out that the prosecutor asked additional questions of the medical examiner in the presence of the jury after the Court's inquiries.  The Court does not find that this fact shows that Defendant was prejudiced. The only fact elicited by the additional questions was that the medical examiner had determined that the victim had "at least three" head injuries consistent with the victim having been struck multiple times.  Defendant himself testified that he had hit the victim in the head three times.  Therefore, the medical examiner's testimony corroborated Defendant's own testimony. Based upon these considerations, the Court finds that this allegation cannot entitle Defendant to relief.

Ex. P at 229-230 (footnotes and attachments omitted).  The state appellate court affirmed denial of this claim.  Ex. Q.

As discussed in Ground 1 above, the trial court's questions to clarify the testimony were not improper—under either Florida or federal law. Thus, trial counsel was not deficient in failing to object to the court's questioning of the medical examiner and Petitioner outside the presence of the jury.  Petitioner has not shown that the trial judge was biased against him or that he was advocating for the State.  Even without the judge's questions and the medical examiner's clarification, the prosecutor could have argued multiple blows were proven by the disparate locations of extensive fracturing identified by the medical examiner on direct examination.  Thus, no prejudice has been shown.

For the reasons discussed in this ground and in Ground 1 above, Petitioner has failed to show under 28 U.S.C. § 2254(d) that the state court's adjudication of this claim resulted in a decision that was contrary to, or involved an unreasonable application of Strickland or any other clearly established federal law, as determined by the Supreme Court, or that it was based on an unreasonable determination of the facts in light of the evidence in the state court record.  Ground 8 should be denied.

## Ground 9: Failure to Object to Photographs of Victim's Hands

Petitioner contends that trial counsel rendered ineffective assistance by failing to object to the State's use of a photograph of the victim's hands because the photograph was not taken at the time of the incident and the medical examiner explained that any swelling in the hands was caused by introduction of the IV needle.  Petitioner also contends that trial counsel should have objected to the photograph—as well as testimony and the State's closing argument about the photograph—because the photograph was not taken contemporaneously with the incident.  He claims that if the photograph had been taken at or near the time of the incidence, it would have proven the victim struck the Petitioner.  ECF No. 1 at 17.

Petitioner made similar claims in his Rule 3.850 motion, where he alleged that the five intervening days between the incident and the photograph provided ample time for any bruises or swelling due to the victim striking the Petitioner to have subsided.  Ex. P at 204.  He further claimed in the motion that trial counsel should have objected to the State's closing argument that the photograph of the victim's hands showed no evidence that the victim ever struck the Petitioner.  Ex. P at 205.

The post-conviction court denied the claim, noting that the claim failed to allege that a photograph of the victim's hands taken immediately

after the attack would have been any different from the photograph shown at trial and because the claim did not allege that trial counsel had been informed that the photograph did not depict the true state of the victim's hands at the time of the incident.  Ex. P at 230.  The state First District Court of Appeal affirmed denial of relief.  Ex. Q.  Respondent contends that the claim should be denied because it is based only on speculation that the victim received injuries on his hands from punching Petitioner, as Petitioner testified had occurred.  ECF No. 13 at 28.

During the medical examiner's testimony, Dr. Minyard testified concerning the condition of the victim's hands as follows:

> Q  (the prosecutor).  Let me ask you this.  Did you observe and take note of Mr. Delmonico's hands?
>
> A.  Yes, we did.
>
> Q.  Okay, Is that standard?
>
> A.  Yes, it's standard in suspected homicide cases.
>
> Q.  Okay. Did you detect any injury to the hands of Mr. Delmonico?
>
> A.  No, just some - - what looked like medical therapy puncture wounds and some swelling.  But that's common when people have had IV's running in their hands.
>
> Q.  And what are medical therapy puncture wounds?
>
> A.  Where they take your blood at the hospital to check for different tests.  The IV is an intravascular access line that can deliver fluids or medicines.
>
> Q.  Did you see any injuries around his knuckles?
>
> A.  No, I did not.

Ex. E at 85-86.  The medical examiner then identified State's Exhibits 32 and 34.  Ex. E at 88.  Trial counsel objected to use of some of the photographs, but not those depicting the victim's hands.  *See* Ex E at 74-76.

The photographs of the victim's hands were taken at the same time as the other autopsy photographs.  Under Florida law, autopsy photographs that are relevant to show the manner of death, the location of wounds, or to assist the medical examiner in explaining the victim's injuries are generally admissible.  Armstrong v. State, 73 So. 3d 155, 168 (Fla. 2011) (citing Ault v. State, 53 So. 3d 175, 198-99 (Fla. 2010)).  The photographs were not gruesome or "unduly prejudicial."  *See id.*  The victim had puncture marks on his hand and the photographs depicting those marks, along with the medical examiner's testimony explaining them, was not improper.  Thus, counsel was not deficient in failing to object.  Even if counsel should have objected to the photographs as not being taken timely, and to the prosecutor's closing argument that the photographs showed the victim had no injuries to his hands indicative of a fight, prejudice has not been shown.

During closing argument, the prosecutor argued there were no injuries on the victim's hands.  Ex. F at 254.  The prosecutor further argued,

". . . there is no injury to Mr. Delmonico's hands, no knuckle injuries, anything like that.  There is no marks.  You got the photographs.  No marks on Mr. Verne's face."  Ex. F at 257-58.  Even if defense counsel had objected to these arguments as not being supported by the evidence of a photograph taken five days after the incident, Petitioner cannot show a reasonable probability that the result of the trial would have been different, that being one sufficient to undermine the court's confidence in the outcome.  And, on § 2254 review, deference is due to the state courts' rulings.  The question is not whether the state court adjudication was correct, but whether it was unreasonable in light of the record.  Mirzayance, 556 U.S. at 123.

The jury had before it evidence, even admitted by Petitioner, that he struck the victim three times with a two-by-four with sufficient force to cause brain damage and fractures to the victim's skull.  Petitioner claimed self-defense, contending he was struck first by the victim, but the witnesses who testified saw no evidence of any facial or neck injuries on Petitioner at the time of the incident.  The photographs of Petitioner taken at the time of his arrest did not show any obvious injuries.  Either the jury would find Petitioner's version of events credible or they would not, and the fact that a photograph taken during the autopsy showing only IV punctures would not

likely govern that credibility determination.  More telling was evidence that Petitioner gave a completely different account to the first witnesses on the scene and to the police once he was taken into custody.

Petitioner has failed to demonstrate prejudice under the second prong of Strickland, and this alone provides a basis to find his ineffective assistance claims fails.  *See* Strickland, 466 U.S. at 697 ("[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. . . .  If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.").

The state courts' adjudication of this claim, finding Petitioner has not demonstrated ineffective assistance of counsel in regard to the photographs of the victim's hands, has not been shown to be unreasonable.  Petitioner has failed to show, pursuant to 28 U.S.C. § 2254(d) that the adjudication resulted in a decision that was contrary to, or an unreasonable application of, Strickland or any other clearly established federal law, as determined by the Supreme Court, or that it resulted in a decision based on an unreasonable determination of the facts

in light of the state court record.  For these reasons, Ground 9 should be denied.

### Ground 10: Counsel's Failure to Investigate Source of Injury

In Ground 10, Petitioner contends that trial counsel rendered ineffective assistance by failing to investigate evidence that the victim could have received the cuts to the back of his head by falling against a chair. ECF No. 1 at 19.  Petitioner raised this claim in his Rule 3.850 motion, in which he argued that Katie Thomas, the first person to find the injured victim, testified that he was lying between a desk and computer chair.  Ex. P at 206.  Petitioner noted Thomas's testimony that the chair had to be moved so that the victim could be rolled over by emergency personnel. Petitioner further contended that "there was no evidence that the 2x4 was the weapon that caused the cut to the back of the victim's head."  Ex. P at 206.  He argued that the medical examiner's testimony that the injury to the back of the victim's head was consistent with the shape of a two-by-four was only her opinion and was not from a forensic expert.  Ex. P at 207.

The post-conviction court denied the claim, noting that the motion never alleged that the victim did, in fact, hit his head on the chair leg, and that at trial defendant admitted that he killed the victim in self-defense.  The post-conviction court also found that no evidence indicated trial counsel

may have been on notice that the injury could have been caused by the chair leg. Ex. P at 230-31. The state First District Court of Appeal affirmed. Ex. Q. The state court adjudications are entitled to AEDPA deference.

The Respondent points out that Petitioner claims counsel should have investigated how the victim received "cuts" to the back of his head, even though the medical examiner testified that the victim's skull was fractured in multiple locations. ECF No. 13 at 29. Respondent is correct that the medical examiner testified not simply to "cuts" on the back of the victim's head that might have caused death, but to multiple injuries caused by very forceful blows that caused death. The medical examiner explained that the victim had two black eyes caused by the force of a blow to the back of the head "when the force of the injury is transmitted through the brain to the other side of the skull." Ex. E at 80. She testified that the left side of the victim's head had a large skull fracture in which the piece of skull was "no longer attached to any portion of its neighboring bone. It has actually broken off in its own little island and just sort of pushed into the brain." Ex. E. at 84. The victim also had a fracture the base of his skull, called a hinge fracture, which she testified is seen most often in car accidents "simply because the force required to make a hinge fracture is so large." Ex. E at

84.  She further explained that a hinge fracture only occurs "when there's been a large amount of forceful injury to the outside of the head."  Ex. E at 85.

Petitioner has not demonstrated that any investigation of cuts to the back of the victim's head caused by falling on a chair leg could have accounted for the severe skull fractures that the medical examiner testified were the cause of brain damage and death.  Even if counsel had presented evidence that the victim had cuts on the back of his head from falling on the chair leg, that evidence would not have overcome the medical testimony of the multiple skull fractures caused by great force.  Petitioner has not demonstrated that but for counsel's alleged error in failing to pursue this investigation into cuts, there is a reasonable probability of a different result at trial.  *See* Strickland, 466 U.S. at 694.

The state courts' adjudication of this claim has not been shown to be unreasonable or contrary to, or an unreasonable application of, Strickland or any other clearly established federal law, as determined by the Supreme Court.  Nor has Petitioner demonstrated that the decision was an unreasonable determination of the facts in light of the evidence in the proceeding.  Ground 10 should be denied.

## <u>Ground 11: Failure to Present Exculpatory Photographic Evidence</u>

Petitioner contends in Ground 11 that his trial counsel rendered

ineffective assistance by failing to present exculpatory photographic

evidence showing, Petitioner alleges, that his neck was swollen and his eye

was swollen shut.  ECF No. 1 at 21.  This claim was raised in Petitioner's

Rule 3.850 motion and denied by the trial court, in pertinent part, as

follows:

> Defendant attaches a color photograph of himself taken on the
> day of the altercation ("attached photograph").
>
>      . . . .
>
>      The prosecutor admitted into evidence at trial several
> photographs of Defendant taken shortly after his arrest.  Upon a
> comparison of the admitted photographs with the attached
> photograph, the Court sees very little difference.  From the
> attached photograph, Defendant avers that one can observe
> "injuries inflicted on the defendant [] by the victim during the
> altercation."  However, Defendant does not indicate when the
> attached photograph was taken in relation to the other
> photographs or why the attached photograph would show
> injuries that the others would not.
>
>      Further, the Court does not find that the attached
> photograph clearly shows "injuries" to Defendant.  The attached
> photograph is open to interpretation.

Ex. P at 231-232.  The state court further found that "[i]n light of the

admission into evidence of other photographs taken at approximately the

same time and the fact that injuries are not clearly visible in the attached

photograph, the Court finds that the attached photograph would not have

had a 'substantial likelihood' of changing the jury's verdict in this case." Ex. P at 232.  The state First District Court of Appeal affirmed denial of this claim.  Ex. Q.  These state court rulings are entitled to AEDPA deference.

The post-conviction determination of a factual issue is presumed correct under 28 U.S.C. § 2254(e)(1) and "the applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  *Id.*  The state post-conviction court determined as fact that the photograph Petitioner contended showed injuries to his face and neck did not clearly show any injuries, and that there was very little difference between the photograph submitted by Petitioner and the photographs taken of him shortly after his arrest and placed into evidence.  Ex. P at 232.  Review of the evidence contained in the record supports this finding of fact.  *See* Ex. O at 91; Ex. B at 273, 280-82.  Petitioner has not rebutted this presumption of correctness by clear and convincing evidence.

Based on the state court's finding, and the evidence in the state court record, the court's conclusion that Petitioner failed to demonstrate prejudice under the second prong of <u>Strickland</u> was not unreasonable.  "Surmounting <u>Strickland</u>'s high bar is never an easy task."  <u>Padilla v. Kentucky</u>, 559 U.S. 356, 371 (2010).  "The <u>Strickland</u> standard must be applied with scrupulous care, lest 'intrusive post-trial inquiry' threaten the integrity of the very

adversary process the right to counsel is meant to serve."  Richter, 562

U.S. at 105 (quoting Strickland, 466 U.S. at 90).

Admission into evidence of the undisclosed photograph submitted by

Petitioner, which looked substantially similar to the photographs placed in

evidence by the State, would not have created reasonable probability of a

different result at trial.  Under the "doubly deferential" standard of review,

"through the 'deferential lens of § 2254(d),' " Petitioner must demonstrate

that it was necessarily unreasonable for the state court to find he failed to

undermine confidence in the jury's verdict.  *See* Pinholster, 563 U.S. at

190.  This showing was not made.

For these reasons, Petitioner has failed to demonstrate that the state

court's adjudication of this claim was contrary to, or involving an

unreasonable application of, Strickland or any other federal law, as

determined by the Supreme Court.  The ruling of the state court was not an

unreasonable determination of the facts in light of the state court record.

Thus, habeas relief on Ground 11 should be denied.

## Ground 12: Failure to Present Crime Scene Reconstruction Expert

Petitioner contends in Ground 12 that his trial counsel rendered

ineffective assistance by failing to request a crime scene reconstruction

expert to reconstruct the crime scene, which would have shown crime

scene evidence was mishandled.  ECF No. 1 at 22.  This claim was raised in the post-conviction court where Petitioner argued that if counsel had moved the trial court to allow the hiring of a crime scene reconstruction expert, "it would have shined a different light to the Jury's minds, as to the defendant's self-defense theory, as how the victim was the aggressor, and how the defendant's prints nor his DNA was found on the said murder weapon, the 2x4 board . . . ."  Ex. P at 208.  Petitioner contended that because the state's crime scene technician testified that the two-by-four appeared to have blood on both ends but not the middle, this was cause for counsel to call in a reconstruction expert to explain how this was possible.  Ex. P at 209.

The post-conviction court denied the claim, concluding that Petitioner failed to identify in his motion any specific exonerating testimony.  Ex. P at 232.  The court concluded that explanation of how Petitioner's fingerprints and DNA did not appear on the two-by-four would not have had any bearing on the jury's verdict because Petitioner admitted he held the board and struck the victim with it.  Ex. P at 233.  Further, the court concluded that such testimony from a crime scene reconstruction witness would not have been any more exonerating than the State's DNA expert, who testified that only the victim's DNA was conclusively established on both the bloody

and the non-bloody portions of the board.  The court held that Petitioner's allegation was not specific enough to support a claim of ineffective assistance of counsel.  Ex. P at 233.  The state First District Court of Appeal affirmed denial of this claim.  Ex. Q.

Petitioner has failed to demonstrate that, in light of the evidence in the record and the allegations in Petitioner's Rule 3.850 claim, the adjudication was unreasonable.  The jury heard from Petitioner that he used the two-by-four in self-defense and struck the victim with it three times after having been attacked.  The victim's blood was on Petitioner's shoes. He told the witness at the scene and the police different version of events than he testified to under oath.  He left the scene of the incident and did not attempt to obtain assistance for the victim.  There is no reasonable probability that, but for counsel's alleged error in failing to secure a crime scene reconstruction expert, that the result of the trial would have been different.  The jury rejected the claim of self-defense, even knowing that the Petitioner's DNA was not on the two-by-four.  Petitioner has not demonstrated that it was unreasonable for the state court to find that he failed to undermine confidence in the jury's verdict.  *See* Pinholster, 563 U.S. at 190.

Because Petitioner has not demonstrated that the state courts'
adjudication resulted in a decision that is contrary to, or involving an
unreasonable application of, federal law as determined by the Supreme
Court, or that it resulted in an unreasonable determination of facts in light of
the state court record, § 2254 relief should be denied.

### Ground 13: Failure to Investigate Crime Scene Contamination

Petitioner next contends that trial counsel rendered ineffective
assistance by failing to investigate alleged contamination of the crime
scene evidence.  ECF No. 1 at 24.  He contended in the trial court in his
post-conviction motion that the depositions of two crime scene technicians
showed that emergency responders directed Katie Thomas, the witness
who found the victim, to move a computer chair that was near the victim in
order that they might roll him over and render aid.  Ex. P at 209.  The chair
was then moved to the front porch of the residence.  Petitioner contended
that photographs of the chair on the porch showed it had blood on the chair
leg.  Ex. P at 210.  He further contended that there were bloody footprints
"never matched to anyone" that counsel should have investigated.  Ex. P at
210.

At trial, Katie Thomas testified that she visited the victim's home that
day because she was going to bring him some food for dinner and could

not reach him on the telephone.  She went to the residence with her

husband and children and knocked.  When the victim did not answer, she

opened the door and, seeing a shadow of someone leaving the room,

called out, thinking it was Mr. Delmonico.  She then saw the victim on the

floor in between a chair and a desk, and in front of the coffee table.  Ex. E

at 56-57; 65.  She summoned her husband, who came in and had a

conversation with Petitioner.  She and her husband attempted to assist the

victim and called 911, and Petitioner left the residence by the back door.

Ex. E at 59.

> Thomas testified about the chair as follows:

>> Q.  Okay, what happened to that chair while you were in the house?

>> A.  911 instructed us to move the chair because we had indicated that there was not room to move Pete and roll him over as they had indicated.

>> . . . .

>> A.  There was not room where we were to roll Pete over. Because they were asking us to roll him over to stop him from choking on the blood.

>> Q.  And where did you move the chair to?

>> A.  The front porch.

Ex. E at 65-66.  Kevin Thomas testified that when he entered the house in

response to his wife's summons, he saw that the victim had been beaten

severely and "there was blood all over the house, all over the carpet."  Ex.

E at 105.

Lacey Oden, crime scene technician for the Escambia County

Sheriff's Office, testified that when she arrived, she saw a chair and blanket

on the porch and an area of suspected blood.  Ex. E at 125.  She said the

living room was in disarray with papers and miscellaneous items on the

floor.  She testified, "A large area of suspected blood was in the right corner

of the residence east of the front door.  Next to that was a computer desk,

which had been damaged, and there was suspected blood on that."  Ex. E

at 125-26.  She found a two-by-four in the kitchen bearing signs of

suspected blood.  Ex. E at 126.  She also testified:

> A.  This is our main area where we had a large pool of
> suspected blood.  As you can tell, it's on the carpet, on the
> shoes, on the desk, and it's on the picture frame there.

Ex. E at 127.

The post-conviction court denied the claim, concluding that it was not

facially sufficient because Petitioner did not explain what an investigation

into crime scene "contamination" would have revealed or how it would have

benefitted the defense.  Ex. P at 234.  The state court found that

Petitioner's allegations did not demonstrate how the alleged contamination

of the crime scene would have changed the outcome of the proceedings in

which Petitioner admitted striking the victim with the two-by-four.  Ex. P at 234.  The state appellate court affirmed denial of this claim.  Ex. Q.

The post-conviction court's ruling that prejudice has not been shown is entitled to AEDPA deference and is not unreasonable.  The jury heard that the computer chair was moved away from the victim to give room to roll the victim over.  Thus, a reasonable assumption was that the chair was very close to the victim when he fell while bleeding, and likely close to the victim's bleeding head where the emergency personnel were focused.  The jury heard testimony that the victim bled profusely, creating a large pool of blood was on the carpet near where the victim fell.  Blood was also found on the desk and on a picture frame.  It would have come as no surprise to the jury to find that blood was also on the leg of the chair that had to be moved.  The jury heard the details about the location of the chair and why it was moved.

It was also not exculpatory that there were unidentified bloody footprints in the residence.  The jury heard that a number of people were in the residence and near the injured victim who was still alive but bleeding profusely.  Moreover, the presence of unidentified bloody footprints would not have exonerated Petitioner because he admitted to hitting the victim

with the two-by-four in self-defense, and blood was found on Petitioner's own shoes.

Based on the evidence in the record, the jury heard the facts underlying Petitioner's claim that the crime scene was altered after emergency personnel arrived.  Petitioner has failed to show that but for the alleged error of trial counsel in further investigating that fact, the jury would have reached different verdict.  The Eleventh Circuit has reiterated the deference owed to the state courts' adjudication in a § 2254 petition:

> "The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so."  Overstreet, 811 F.3d at 1287 (quotation marks omitted) (quoting Richter, 562 U.S. at 105).  Under § 2254, we must evaluate the highest state-court decision that evaluated the claim "on the merits."  28 U.S.C. § 2254(d); Newland v. Hall, 527 F.3d 1162, 1199 (11th Cir. 2008).  Here, that is the DCA's per curiam affirmance of the Rule 3.850 trial court's denial of the Rule 3.850 motion.  *See* Pinholster, 563 U.S. at 187-88; Richter, 562 U.S. at 98.  Because the DCA did not give reasons for its summary affirmance, if there was any reasonable basis for the state court to deny relief, we are bound to affirm the denial of the petition.  Pinholster, 563 U.S. at 187-88; Richter, 562 U.S. at 98.

Marshall v. Sec'y, Florida Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016).

In making the determination of prejudice under Strickland, "a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury."  Strickland, 466 U.S. at 695.  Based on the totality

of the evidence presented at trial, including Petitioner's testimony that he struck the victim three times with the two-by-four, there was a reasonable basis on which the state appellate court could affirm denial of relief on this claim on the grounds that Petitioner could not establish prejudice under Strickland.  Both deficiency and prejudice must be proven, and when the claim can be resolved on the basis of lack of prejudice, without ruling on deficiency, that is the preferred course.  "[T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one."  Strickland, 466 U.S. at 697.  "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. . . .  If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."  *Id.*

Petitioner has not shown that the state courts' adjudication of this claim was unreasonable or in any other way meets the requirements of 28 U.S.C. § 2254(d).  Thus, habeas relief on Ground 13 should be denied.

## Ground 14: Due Process and Equal Protection

In this ground, Petitioner claims that "the reviewing court" denied him due process and equal protection by treating him unequally on the application of the "Stand Your Ground" law.  ECF No. 1 at 26.  This allegation appears to refer to the state First District Court of Appeal's decision affirming the denial of his post-conviction claim that the trial court's instruction of justifiable use of deadly force conflicted with his right to stand his ground.  *See* Ex. G at 16 (direct appeal); Ex. J (affirming per curiam). Petitioner contends here, in his reply, that the facts of his case were substantially similar to the facts in Floyd v. State, 151 So. 3d 452 (Fla. 1st DCA 2014).  *See* Ex. 18 at 2.  That decision held that the standard jury instruction on justifiable use of deadly force was misleading and in conflict with the law on a defendant's duty to retreat.  On review by the Florida Supreme Court, however, the district court decision was quashed in State v. Floyd, 186 So. 3d 1013, 1020-21 (Fla. 2016).  *See* Grounds 2 & 3, *supra*.

In State v. Floyd, the Florida Supreme Court held that the standard jury instruction on justifiable use of deadly force "accurately and correctly explains this [Stand Your Ground] law to the jury."  Floyd, 186 So. 3d at 1020.  The court further explained, "The instructions are not confusing, misleading, or contradictory with regard to the duty to retreat where there is

a question of fact as to who was the initial aggressor." *Id.* at 1023.

Therefore, Petitioner cannot show that the state reviewing court denied him

due process or equal protection in affirming his conviction and sentence

after a trial in which the instruction on justifiable use of deadly force was

given.[12]  As discussed in Ground 2 above, the instructions given in

Petitioner's case correctly instructed the jury on the circumstances under

which Petitioner had the right to stand his ground and meet force with

deadly force.

For these reasons, Petitioner has failed to demonstrate that the

adjudication of the state reviewing court denied him due process or equal

protection in his direct appeal, or was in any way contrary to, or involving

and unreasonable application of, federal law, as determined by the United

States Supreme Court, or that it was an unreasonable determination of the

facts in light of the state court record.  Relief on Ground 14 should,

therefore, be denied.

---

[12] Moreover, when the state district court of appeal affirmed his conviction and sentence
on direct review, the Floyd cases had not been decided.

## Conclusion

Based on the foregoing, Petitioner Donald Stanley Verne, is not entitled to federal habeas relief.  Accordingly, the § 2254 petition (ECF No. 1) should be denied.

## Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  Rule 11(b) provides that a timely notice of appeal must still be filed, even if the court issues a certificate of appealability.

Petitioner fails to make a "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (explaining substantial showing) (citation omitted).  Therefore, the Court should deny a certificate of appealability.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  The parties shall make any argument as to

whether a certificate should issue by objections to this Report and Recommendation.

Leave to appeal in forma pauperis should also be denied.  *See* Fed. R. App. P. 24(a)(3)(A) (providing that before or after notice of appeal is filed, the court may certify appeal is not in good faith or party is not otherwise entitled to appeal in forma pauperis).

## Recommendation

It is therefore respectfully **RECOMMENDED** that the Court **DENY** the § 2254 petition (ECF No.1).  It is further **RECOMMENDED** that a certificate of appealability be **DENIED** and that leave to appeal in forma pauperis be **DENIED**.

**IN CHAMBERS** at Tallahassee, Florida, on, March 10, 2017.

**S/ Charles A. Stampelos**
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2).  A copy of the objections shall be served upon all other parties.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Fed. R. Civ. P. 72(b)(2).  Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not**

**control**. **If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a Report and Recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.** *See* **11th Cir. R. 3-1; 28 U.S.C. § 636.**